**ANR PIPELINE COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Conoco Incorporated, et al.,
Intervenors.**

No. 88–1292.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 1989.

Decided March 24, 1989.

718

William W. Brackett, with whom Daniel F. Collins, Terry O. Brackett, and Steven A. Taube, Washington, D.C., were on the brief, for petitioner. Fern L. McGovern, Washington, D.C., entered an appearance for petitioner.

Samuel Soopper, Attorney, F.E.R.C. ("FERC"), with whom Catherine C. Cook, Gen. Counsel, Joseph S. Davies, Deputy Sol., and Douglas Law, Atty., F.E.R.C., Washington, D.C., were on the brief, for respondent.

Carolyn S. Hazel, Houston, Tex., John P. Beall, Kathleen E. Magruder, Houston, Tex., and Michael L. Pate were on the joint brief for intervenors in support of respondent.

Thomas H. Burton, Houston, Tex., entered an appearance for intervenor Conoco Inc.

James D. Hurley, New Orleans, La., entered an appearance for intervenor Texaco Producing, Inc.

Harris S. Wood, Craig W. Hulvey, and Kevin M. Sweeney, Washington, D.C., entered appearances for intervenor ARCO Oil and Gas Co.

Before ROBINSON, STARR, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

In 1979, a federal agency determined that two off-shore wells drilled by Conoco Inc. would produce natural gas from a reservoir discovered on or after July 27, 1976. As a result, Conoco became entitled to

charge the incentive price authorized under the Natural Gas Policy Act of 1978 for "new natural gas." Based on information developed after the original determinations were made, all parties agree that the gas was in fact produced from reservoirs discovered prior to the operative date. ANR Pipeline Company petitions for review of a Federal Energy Regulatory Commission decision that the Commission is not required to reopen the original determinations in light of the later-acquired information. As we conclude that the Commission's position is consistent with the Act, we deny review.

## I. STATUTORY BACKGROUND

Congress enacted the Natural Gas Policy Act of 1978, 15 U.S.C. §§ 3301–3432 (1982) ("Act"), in response to the energy crisis of the 1970's. In order to encourage the development of new sources of natural gas that would have proven uneconomic under existing price ceilings, section 102 of the Act authorizes "new natural gas" produced from certain categories of wells to be sold at the incentive price authorized by the section. *Id.* § 3312(b). Subsection 102(d) defines one such category:

> Natural gas determined in accordance with section 3413 of this title to be produced from an old lease on the Outer Continental Shelf shall qualify for the new natural gas ceiling price if such natural gas is produced from a reservoir which was not discovered before July 27, 1976.

*Id.* § 3312(d)(1).

Section 503 sets forth procedures for determining whether gas from a particular well will qualify for preferential pricing under section 102. Upon application by a producer, the federal or state agency having regulatory jurisdiction over the well will determine whether the gas qualifies for incentive pricing, unless the agency waives that responsibility. *Id.* § 3413(c). The agency then sends notice of its determination and the supporting record to the Federal Energy Regulatory Commission ("FERC" or "Commission"). *Id.* § 3413(a)(2). FERC reviews the agency's

determination to ensure that it is supported by "substantial evidence in the record." *Id.* § 3413(b)(1)(A). The Commission has a period of forty-five days from receipt of notification within which to make a finding that the agency determination is unsupported by substantial evidence. *Id.* § 3413(b)(1)(B). If the Commission remands or reverses, its action is subject to judicial review. *Id.* § 3413(b)(4).

This case requires an interpretation of the statutory provision governing the circumstances under which FERC may reopen a final well determination. Section 503(d) states, in relevant part:

> Any final determination ... which is no longer subject to review by the Commission under this section or to judicial review shall thereafter be binding with respect to such natural gas. The preceding sentence shall not apply to any final determination—
>
> (A) if in making such determination the Commission or such Federal or State agency relied on any untrue statement of a material fact; or
>
> (B) if there was omitted a statement of material fact necessary in order to make the statements made not misleading, in light of the circumstances under which they were made, to the Federal or State agency in making such final determination or to the Commission in reviewing such determination.

*Id.* § 3413(d)(1).

## II. THE PRESENT CASE

In February 1979, Conoco Inc. applied to the United States Geological Survey (now the Department of the Interior's Mineral Management Service ("MMS")) for section 102(d) determinations for two wells located off the coast of Louisiana. The MMS determined, on the basis of the data submitted by Conoco, that the gas produced by each well came from a reservoir discovered on or after July 27, 1976. Pursuant to the Commission's regulations, these·determinations became final on June 28, 1979, forty-five days following notification. *ANR Pipeline Co. v. Conoco Inc.,* 40 F.E.R.C.

¶ 61,278 (1987) (order dismissing ANR complaint).

Based on an analysis of subsequently developed information, Conoco became persuaded that contrary to its original belief and the MMS's determination, the gas produced by the two wells actually originated in a reservoir discovered before July 27, 1976, and thus did not qualify for incentive pricing under section 102(d). On June 24, 1985, Conoco filed a petition to reopen and vacate the well category determinations and refunded $6.8 million to the purchaser of the gas, ANR Pipeline Co. Subsequently, on February 18, 1986, FERC issued a declaratory order in another case in which it held that section 503(d) did not require the reopening of a final well category determination that was contradicted by later-acquired information. *Mobil Oil Exploration & Producing Southeast Inc., et al.,* 34 F.E.R.C. ¶ 61,211 (1986). In light of this development, Conoco filed a notice of withdrawal of its petition to reopen, which the Commission permitted on July 14, 1986.

ANR filed a complaint with the Commission requesting that FERC reopen and vacate the well category determinations. In the alternative, ANR asked the Commission to prevent Conoco from collecting the incentive rates from the date that Conoco knew or should have known that the wells had been incorrectly classified. Upon finding that Conoco had submitted "all relevant information to MMS at the time the applications were processed" and that the information available to the agency was "correct and complete," and in reliance on its reasoning in *Mobil,* FERC ordered the dismissal of ANR's complaint. *ANR Pipeline,* 40 F.E.R.C. at 61,909, *reh'g denied,* 43 F.E.R.C. ¶ 61,061 (1988).

ANR challenges FERC's order on four grounds. First, the pipeline claims that the decision in *Mobil* is inconsistent with the language and intent of section 503(d). Second, it argues that the doctrine is defective because it was not promulgated pursuant to the notice and comment procedures required by the Administrative Procedure Act, 5 U.S.C. § 553 (1982) ("APA"). Third, ANR maintains that, regardless of the rule's validity, the *Mobil* doctrine does not control this case. Fourth, it argues that the Commission should have granted the pipeline a full evidentiary hearing.

III.   THE VALIDITY OF THE *Mobil* DECISION

In *Mobil,* FERC considered petitions for declaratory orders filed by Mobil Oil Exploration & Producing Southeast Inc., and Gulf Oil Corporation, and a request by Exxon Corporation that its petition to reopen and vacate a final section 102(d) well determination be withdrawn pending disposition of Mobil's petition for a declaratory order. At issue in each case was whether, on the facts presented, a final section 102(d) well determination was subject to reopening because information developed two to three years after a final well determination indicated that the gas produced by such well actually originated in a reservoir discovered prior to July 27, 1976. The Commission concluded that section 503(d) did not require the reopening of the original determinations because "all relevant geologic information available at the time of the initial applications" had been submitted. Thus the section's "criteria for reopening, namely untrue statements or omissions of material facts, have not been met." Furthermore, "since the [administrative] consequences of reopening would, in [the Commission's] judgment, be unreasonable and unfair," it declined to reopen the longstanding well determinations. *Mobil,* 34 F.E.R.C. ¶ 61,211 at 61,359.

■   ANR challenges the *Mobil* decision, arguing that FERC erred in concluding that section 503(d) precluded the use of later-discovered evidence to ascertain whether the information relied upon in the original determination was erroneous or incomplete. Because ANR disputes an agency's interpretation of a statute that the agency is entrusted to administer, we look to *Chevron U.S.A. Inc. v. NRDC, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), for the appropriate standard of review. If congressional intent on the question at issue is clear, we will not defer to the agency. Otherwise, we will

uphold the agency as long as its interpretation is "permissible." *Id.*

■ As neither party argues that the congressional intent is unambiguous, we move directly to *Chevron*'s second prong and find that the Commission's interpretation is not merely permissible but, indeed, the most natural interpretation of section 503(d). The Commission's focus on the facts *as they were known* at the time the determinations were made is consistent with Congress' use of the past tense throughout section 503(d). Furthermore, subsection (1)(B) specifically directs FERC to determine whether statements made by the producer were misleading "in light of the circumstances under which they were made"—in other words, at the time the data was presented to the agency making the determination. Also, the subsection's use of the word "omitted" strongly suggests that Congress intended FERC to re-open a determination only when an applicant failed to produce information then known to exist, and not when information bearing on the actual source of the gas is discovered after the final determination has been made.

We also agree with the Commission's view of the significance of the interaction between subsections 503(d)(1) and (2). Subsection (d)(1) authorizes the reopening of a final determination only when "(A) [it was made in reliance] on *any untrue statement* of a material fact" or "(B) there was *omitted a statement of material fact* necessary in order to make the statements made not misleading" to the agency making the determination (emphasis added). Under subsection (d)(2), anyone who is responsible for "[a]ny untrue statement or omission of material fact" on which the Commission relied is made subject to the provisions of 18 U.S.C. § 1001, which imposes criminal penalties for anyone who "knowingly or willfully" provides a federal agency with false or misleading information. This strongly implies that the accuracy and completeness of the information submitted is to be judged on the basis of *contemporary* knowledge. Surely Congress did not intend to criminalize a party's failure to present information that was not discovered until after the determination was made.

Not only is the *Mobil* decision consistent with section 503(d)'s language, it also promotes one of the Act's principal goals. By giving producers confidence in the finality of the Commission's well determinations, the section (as interpreted) encourages the development of new energy supplies. *See, e.g.,* H.R.Rep. No. 543, 95th Cong., 2d Sess. 9 (1978) ("natural gas pricing policy must encourage development of new resources"); S.Rep. No. 436, 95th Cong., 2d Sess. 21 (1978), (new energy policy "recognizes the need to provide a sufficient incentive for the development of future supplies with substantially higher long-range development costs").

Natural gas exploration and development is a risky and expensive business. After a gas discovery is made, petroleum engineers must determine whether the indicated reserves are capable of economic production. This requires the evaluation of a number of factors including the volume of potentially recoverable reserves, the costs of development drilling and production, and the price that the producer may reasonably expect to receive for its gas. By establishing an incentive pricing structure, the Act seeks to assure the development of sources that otherwise would not be produced. *Williston Basin Interstate Pipeline Co. v. FERC,* 816 F.2d 777, 779 (D.C.Cir.1987).

ANR argues that *Mobil* is based on an unreasonable interpretation of section 503(d) because it requires consumers to pay incentive prices for gas even when it is demonstrated, on the basis of new information, that the producing well does not qualify for section 102(d) status. If we were to adopt ANR's reading of the section, however, we would undermine the Act. To the extent that we erode producers' confidence in the finality of a well determination, we discourage producers from making the large capital outlays required to develop and produce otherwise unprofitable fields. Given this context, it was entirely reasonable for FERC to conclude that Congress did not require that final well determinations be reopened on the basis of hindsight.

■ Finally, we reject ANR's contention that FERC improperly converted its decision in *Mobil* into a substantive rule because it was not promulgated pursuant to the APA's notice-and-comment procedures (5 U.S.C. § 553). It is well established that an agency may interpret its enabling statute on a case-by-case basis through the exercise of its adjudicatory function. *See, e.g., Kansas Gas & Elec. Co. v. FERC,* 758 F.2d 713, 719 (D.C.Cir.1985) (it is "beyond dispute that an agency may articulate its general policy in a particular proceeding ... rather than in a rulemaking"). *See also SEC v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947) ("There is ... a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency.").

IV. APPLICATION OF *Mobil* TO THIS CASE

Having concluded that *Mobil* presents an acceptable interpretation of section 503(d), we next turn to ANR's contention that the Commission erred in applying *Mobil* to this case because of factual distinctions between the two. ANR makes four arguments, which we address in turn.

■ ANR claims, first, that *Mobil* is inapposite because certain structure maps prepared by ANR *prior* to the time of the final well determination indicated the true source of the gas tapped by the Conoco wells, whereas the relevant information in *Mobil* was developed long after. In its order dismissing ANR's complaint, FERC found that the maps were nothing more than "professional opinions which are subject to dispute" and, as such, did not constitute "material fact[s]." 40 F.E.R.C. at 61,909; *see* § 503(d) (final determinations may be reopened if "there was omitted a statement of material fact necessary in order to make the statements made not misleading"). Moreover, ANR had not made the maps available to the MMS.

We agree with the Commission. Indeed, at oral argument, ANR conceded that the phrase "material fact," as used in section 503(d), relates to the basic information from which geologists and engineers deduce the existence or nonexistence of a new reservoir, and not to the conclusions they may draw from the data. Structure maps are not direct geological evidence; rather, they represent interpretations of subsurface conditions based on such evidence as electric logs and core samples. ANR does not assert that Conoco failed to present the MMS with all the known data relevant to a section 102(d) determination. Presumably, the MMS assessed Conoco's data and came to a different conclusion from that reached by ANR's petroleum engineers.

■ Second, ANR argues that the Commission erred because Conoco acquired bottom hole pressure data indicating that the wells stemmed from a pre–1976 reservoir within two months after the well determination. In *Mobil,* the oil producers did not discover new information contradicting the well classifications until two or more *years* after the final determination. ANR emphasizes the Commission's reference, in its statement of the issue in *Mobil,* to "information that becomes available *long after* the determination is made and becomes final." 34 F.E.R.C. at 61,358 (emphasis added).

We offer two comments. The amount of time that elapses between a final determination and the discovery of new information is irrelevant to the Commission's conclusion that the completeness and truthfulness of the information provided by the producer is to be determined as of the time the section 102(d) determination is made. Second, even if we were to agree that the passage of time was relevant to the administrative considerations cited by the Commission in *Mobil* (a reopening would make all well determinations subject to future review on the basis of new geological information, *id.* at 61,359), the fact is that Conoco did not become aware of the implications of the bottom hole pressure data until more than five years after the determination became final, and we have been shown no basis for concluding that a producer is un-

der a continuing duty to scrutinize subsequently developed information against the possibility that it might prove inconsistent with a final determination.

Third, ANR maintains that this case is distinguishable from *Mobil* because after deciding that its wells did not qualify under section 102(d), Conoco paid funds to ANR that ANR in turn distributed to its then-existing customers. In its brief, ANR complains that FERC has failed to consider how the pipeline is to recover, from a significantly changed constellation of customers, the $6.8 million it will be required to reimburse Conoco. As ANR failed to raise this issue in the proceedings before the Commission, we decline to consider it at this time. *See* 15 U.S.C. § 3416(a)(4) (courts shall not consider an issue "not urged before the Commission in the application for rehearing unless there was reasonable ground for the failure to do so").

Finally, ANR contends that FERC erred in relying on *Mobil* because its decision in *Barnhart Co.*, 44 F.E.R.C. ¶ 61,224 (1988), is more closely analogous to the case at hand. *Barnhart*, however, is clearly distinguishable because, in that case, FERC did not reopen a well classification on the basis of information discovered after the final determination, and it explicitly distinguished this case and *Mobil* on that ground:

> In *Mobil* and *ANR*, data which would have otherwise disqualified the subject well category determinations came into existence and was acquired by the respective jurisdictional agency *after* the determinations became final. Here, on the other hand, it appears that there was disqualifying information in existence when Barnhart filed its application.

*Id.* at 61,834 (emphasis in original). But even if the present case were inconsistent with *Barnhart*, that would not indicate that FERC misapplied *Mobil*. Rather, it would suggest that the Commission should have explained its departure from precedent in *Barnhart*. *See, e.g., King Broadcasting Co. v. FCC*, 860 F.2d 465, 470 (D.C.Cir.1988) (agency must follow past practice or explain rationale for departure).

## V. REFUSAL TO SET A HEARING

We also reject ANR's contention that, at a minimum, the Commission should have scheduled a hearing to determine when Conoco knew or should have known the source of the gas as demonstrated by ANR's structure maps. The established law in this circuit is that FERC need not hold an evidentiary hearing where no issue of material fact is to be resolved. *Kansas Power & Light Co. v. FERC*, 851 F.2d 1479, 1484 (D.C.Cir.1988); *General Motors Corp. v. FERC*, 656 F.2d 791, 794–95 (D.C.Cir.1981). We see no reason to insist on a hearing in this case. As the Commission has pointed out, the ANR maps are not material facts, and the MMS was in possession of the data on which they were based at the time it made its determination.

## VI. CONCLUSION

As ANR has not established that the material facts presented by Conoco in support of its applications for section 102(d) determinations were either untrue or misleading, and as section 503(d) does not require that such a determination be reopened on the basis of later-discovered evidence, ANR's petition for review is

*Denied.*