**GRYNBERG PETROLEUM COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Rocky Mountain Natural Gas Company, Intervenor.**

No. 95–1173.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 5, 1996.

Decided March 8, 1996.

**518**

Nancy J. Skancke, Washington, DC, argued the cause for the petitioner.

Jill L. Hall, Attorney, Federal Energy Regulatory Commission, Washington, DC, argued the cause for respondent. Jerome M. Feit, Solicitor, and Joseph S. Davies, Deputy Solicitor, Washington, DC, were on brief for respondent.

John T. Miller, Jr., Washington, DC, argued the cause, for intervenor.

Before: EDWARDS, Chief Judge; WALD and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Grynberg Petroleum Company (Grynberg) petitions for review of a Federal Energy Regulatory Commission (FERC) order refusing to reopen a final determination by the Bureau of Land Management (BLM) regarding the geology of a natural gas field underlying federal land. We deny Grynberg's petition.

## I.

The Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. §§ 3301 et seq., established ceiling prices for wellhead sales of natural gas. Section 107 of the NGPA authorized FERC to prescribe incentive prices (prices higher than otherwise applicable ceiling prices) to encourage the production of natural gas "produced under such ... conditions as the Commission determines to present extraordinary risks or costs." 15 U.S.C. § 3317(c)(5). Pursuant to this authority FERC decided that natural gas produced from a "tight formation" qualified for section 107 incentive pricing. A tight formation is a geological formation of low permeability, i.e., a formation that impedes the flow of gas, thereby requiring a producer to use enhanced production techniques (e.g., fracturing) to improve the flow of gas. FERC established several criteria an area must meet to qualify as a tight formation, one of which is that "[t]he estimated average in situ gas permeability, throughout the pay section, is expected to be 0.1 millidarcy or less." 18 C.F.R. § 271.703(c)(2)(i)(A).

Section 503 of the NGPA (15 U.S.C. § 3413) sets forth the procedures for qualifying an area as a tight formation. First, the federal or state agency with regulatory jurisdiction over the production of natural gas (the "jurisdictional agency") reviews geological data and engineering information and, using FERC's criteria, determines whether a formation qualifies as a tight formation. The jurisdictional agency then notifies FERC of its determination and FERC reviews it to see if it is supported by substantial evidence. FERC can either affirm, reverse, remand, make a preliminary finding on or take no action regarding the determination. The determination automatically becomes final if FERC takes no action on it within 45 days. Judicial review is available only if FERC either reverses or remands. 15 U.S.C. § 3413(b)(4).

The Natural Gas Wellhead Decontrol Act of 1989, Pub.L. No. 101-60, 103 Stat. 157 (Decontrol Act), repealed the NGPA's price ceilings, including section 107 incentive prices for tight formation gas, effective January 1, 1993. A tight formation designation remains

of importance, however, because in 1990 Congress reinstituted a tax credit for tight formation gas. *See* Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 11501, 104 Stat. 1388–479 (codified at 26 U.S.C. § 29). To be eligible for the tax credit the gas must be produced from a well drilled or a facility placed in service between December 31, 1979 and January 1, 1993 and the gas must be sold before January 1, 2003. 26 U.S.C. § 29(f). Because of the tax credit (and despite the loss of regulatory authority resulting from the Decontrol Act) FERC issued a series of orders, ending with Order No. 539–C issued on July 12, 1993. The order provided that until April 30, 1994 FERC intended to continue to review the jurisdictional agency's tight formation determination so long as the underlying application for an initial determination was filed with the jurisdictional agency before January 1, 1993. *Order Qualifying Certain Tight Formation Gas For Tax Credit,* Order No. 539–C, III F.E.R.C. Stats. & Regs. ¶ 30,974 (1993).

## II.

Grynberg produces natural gas from the Blue Gravel Gas Field in Colorado, an area located on both federal and state land. The jurisdictional agency for state land in Colorado is the Colorado Oil and Gas Conservation Commission (COGCC). BLM is the jurisdictional agency for federal land. In 1992 Grynberg, desiring a tax credit, filed separate applications with COGCC and BLM to have the field designated as a tight formation. COGCC issued an affirmative tight formation determination for the area underlying state land and the determination became final when FERC took no action on it within 45 days. BLM subsequently issued a negative tight formation determination for the area underlying federal land after concluding that the record failed to demonstrate an estimated average *in situ* gas permeabili-

ty of 0.1 millidarcy or less. Grynberg protested the negative determination but FERC again took no action and so it became final 45 days later, on September 30, 1993.

Five months later, on March 1, 1994, BLM petitioned FERC to reopen the negative determination and allow BLM to replace it with a revised determination qualifying the area as a tight formation. The revised determination (prepared by a different engineer and a different geologist) concluded that the *in situ* permeability was expected to be less than 0.1 millidarcy and questioned BLM's earlier analysis. FERC denied the petition to reopen because it did not meet the requirements of section 503(d), which makes the jurisdictional agency's final determination binding unless the agency relied on incomplete or inaccurate information. 61 F.E.R.C. ¶ 61,320 (1994).[1] FERC denied Grynberg's request for rehearing. 69 F.E.R.C. ¶ 61,509 (1995). Grynberg petitions for review.

## III.

FERC first challenges Grynberg's standing because it has not suffered an "injury in fact" as a result of FERC's order. It argues that Grynberg sought a tight formation determination to obtain a tax credit but can only speculate that the Internal Revenue Service (IRS) will defer to FERC's refusal to reopen the proceeding to give effect to BLM's revised (affirmative) determination. FERC relies on *Marathon Oil Co. v. FERC,* 68 F.3d 1376 (D.C.Cir.1995). In that case natural gas producers challenged FERC's refusal to review two jurisdictional agencies' affirmative tight formation determinations. They argued that FERC's failure to affirm made it more difficult, if not impossible, for them to get the tight formation tax credit. We held that the producers could not establish an "injury in fact" for constitutional standing because they could not establish from the record that the IRS would give any weight to FERC's decision.

---

1. Section 503(d) provides that a jurisdictional agency's final determination no longer subject to review by FERC or the courts is binding. There is a proviso to the binding effect of the determination, however, (1) "if in making such determination [FERC or the jurisdictional agency] relied on any untrue statement of a material fact" or (2)

"if there was omitted a statement of material fact necessary in order to make the statements made not misleading, in light of the circumstances under which they were made, to the [jurisdictional agency] in making such final determination or to [FERC] in reviewing such determination."

■ We need not decide whether on the facts of this case the IRS would likely defer to FERC's decision not to reopen BLM's negative determination (and thus whether FERC's order would likely affect Grynberg's success in obtaining the tax credit) because *Marathon Oil* is distinguishable for another reason: FERC's failure to reconsider BLM's negative determination could affect the price of natural gas sold under the 1975 gas purchase contract between Grynberg and Rocky Mountain Natural Gas Company (Rocky Mountain). In a 1984 amendment to the contract Grynberg reserved the right to charge the section 107 incentive price for gas sold to Rocky Mountain. The parties to the contract have been and, it appears, continue to be [2] involved in litigation over the effect of the contract's pricing provisions and, according to Grynberg, an affirmative tight formation determination would enable it to assert that it is entitled to the incentive price. Rocky Mountain's appearance as an intervenor here confirms that an affirmative tight formation determination may enable Grynberg to collect the incentive price for at least some of the gas sold under the contract—after all, why would Rocky Mountain otherwise care whether Grynberg gets a tax credit? [3] In sum, Grynberg has standing. We turn now to the merits.

### IV.

BLM's original (negative) determination became final when FERC took no action on it within 45 days. Section 503(d), however, provides that a jurisdictional agency's final determination is not binding if the agency (1) relied on an untrue statement of material fact or (2) was affected by an omission of a material fact. FERC interprets section 503(d) to mean that a final determination cannot be reopened unless at least one of the two criteria is satisfied. *See* 18 C.F.R. § 275.205(a). Moreover, FERC has declared that if a jurisdictional agency's determination is based on information correct and complete at the time the determination was made and reviewed by FERC, the section 503(d) criteria for reopening are not met. *Mobil Oil Exploration & Producing Southeast Inc.,* 34 F.E.R.C. ¶ 61,211 (1986). Further, an expert's analysis of raw data is a professional opinion subject to dispute, not a material fact. When a jurisdictional agency subsequently evaluates and finds persuasive an analysis that, although performed before the agency issued its determination, was not submitted to the agency until after it acted, FERC will not reopen the proceeding. *ANR Pipeline Co.,* 40 F.E.R.C. ¶ 61,278 (1987), *review denied, ANR Pipeline Co. v. FERC,* 870 F.2d 717 (D.C.Cir.1989).[4] In short a final determination will not be reopened merely because a jurisdictional agency, upon reflection or in light of a previously unconsidered analysis of raw data, interprets differently the same data it reviewed in reaching its original determination. Here FERC concluded that BLM did just that.

■ Grynberg argues that section 503(d) is satisfied because BLM's original determination was based on omissions of material fact. Grynberg's strongest point is that BLM, in making its original determination,

---

**2.** *See* Affidavit of Jack J. Grynberg (Nov. 21, 1995), Appendix C–1 to Grynberg's Reply Brief, at 2 ("The contract pricing provision in the 1975 Agreement and the 1984 Amendment between Grynberg and Rocky Mountain is and has been the subject of litigation in the Colorado courts.").

**3.** When BLM notified FERC of its original determination and Grynberg protested, Rocky Mountain filed a motion to intervene, asserting that "Rocky Mountain, as the purchaser of gas under the 1975 contract ... has a direct and substantial economic interest in the outcome of the above-captioned proceeding before this Commission," Joint Appendix (JA) 41.

**4.** To support its petition to reopen, ANR Pipeline Company had submitted two items not included in the jurisdictional agency's record: (1) struc-

ture maps dated *before* the jurisdictional agency made its determination and (2) a bottom hole pressure survey dated *after* the jurisdictional agency's determination. Applying section 503(d), FERC rejected the structure maps as constituting not a "material fact" but a professional opinion subject to dispute. 40 F.E.R.C. at 61,909; *see ANR Pipeline,* 870 F.2d at 722 ("Structure maps are not direct geological evidence; rather, they represent interpretations of subsurface conditions based on such evidence as electric logs and core samples."). FERC also rejected the bottom hole pressure survey because it post-dated the jurisdictional agency's determination. 40 F.E.R.C. at 61,909 (relying on *Mobil Oil, supra*).

did not have access to a written analysis prepared by Grynberg's expert in petroleum and natural gas engineering, Robert Lee, who concluded that the average *in situ* permeability of the formation was expected to be less than 0.1 millidarcy. (BLM's revised determination relied heavily on Lee's analysis.) But we agree with FERC that the absence of Lee's written analysis did not constitute an omission of a material "fact." Lee's written analysis, which relied on the same data (*e.g.*, flow pressures and rates) used by Rocky Mountain in its submission to BLM and reviewed by BLM in reaching its original conclusion, does not constitute a material fact. *See ANR Pipeline*, 870 F.2d at 722 ("[T]he phrase 'material fact,' as used in section 503(d), relates to the basic information from which geologists and engineers deduce the existence or nonexistence of a new reservoir, and not to the conclusions they may draw from the data.").[5] Moreover, Grynberg has not explained why it did not submit Lee's written analysis to BLM before BLM made its original determination. (Lee apparently completed his analysis before he testified for Grynberg at the COGCC hearing in December 1992, *see supra* note 5; BLM did not issue its original determination until August 1993.) *See ANR Pipeline*, 40 F.E.R.C. at 61,909.

▉ Grynberg's other alleged omissions of material fact fare no better. Grynberg complains that BLM's original determination omitted, *inter alia*, an independent calculation of permeability values, a verification of Rocky Mountain's data, a permeability distribution map which would have highlighted some of the problems with Rocky Mountain's data, a normalization of Rocky Mountain's data and an appropriate comparison of the data submitted by Rocky Mountain and Grynberg. In effect Grynberg assails BLM's original analysis and contends that any short-

coming in the analysis constitutes an omission of material fact. Section 503(d), however, relates to the accuracy and completeness of the record before the jurisdictional agency, not the soundness and thoroughness of the jurisdictional agency's analysis of the record. *See ANR Pipeline*, 870 F.2d at 721 (section 503(d) focuses on "accuracy and completeness of the information submitted" to jurisdictional agency). Section 503(d) is not a back door for "arbitrary or capricious" review.[6]

Sidestepping section 503(d), Grynberg points out that the NGPA contemplated that FERC would defer to a jurisdictional agency's fact finding and technical analysis. True, but it does not follow that FERC must reopen a final determination whenever a jurisdictional agency simply changes its opinion. Grynberg also insists that as a matter of sound public policy an agency should be allowed to correct its mistakes. This argument, which assumes that BLM sought to correct a mistake rather than merely change its opinion, ignores section 503(d) which FERC has reasonably declared to be the exclusive route to reopen a final determination. Moreover, the argument overlooks the strong interest in finality that counsels against reopening when an agency simply reinterprets, *via* an additional expert opinion, the same data it reviewed in rendering an earlier determination. *See ANR Pipeline*, 870 F.2d at 721 (stressing importance of finality).

\*　　\*　　\*

For the foregoing reasons Grynberg's petition for review is

*Denied.*

---

5. Although BLM did not have a copy of Lee's written analysis (calculating an average *in situ* permeability of 0.032 millidarcy), BLM was aware of his conclusions. COGCC held a hearing on *in situ* permeability and Lee testified there as Grynberg's expert. JA 527. In the course of his testimony he summarized, albeit briefly, his methodology and results. JA 111–12 (explaining he calculated permeability of 0.03 millidarcy). BLM reviewed a transcript of Lee's testimony in preparing its original determination. JA 2, 10.

6. Grynberg also argues that BLM relied on untrue statements of material fact. But Grynberg did not raise below the "untrue statements" arguments it now raises and therefore we will not consider them. *See* 15 U.S.C. § 3416(a)(4) (court will not consider issue "not urged before the Commission in the application for rehearing unless there was reasonable ground for the failure to do so"); *ANR Pipeline*, 870 F.2d at 723.